UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:25-CV-00642-JHM-RSE

**JOSHUA WHITE**  PETITIONER

**VS.**

**DISMAS CHARITIES, INC., RRC, et al.**  RESPONDENTS

**FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATION**

This matter is before the Court on Petitioner Joshua White's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (DN 1). Respondents Dana Digiacomo and William K. Marshall, III filed a response (DN 13), and Petitioner replied (DN 14). Petitioner also filed a motion for service, status conference, and conditional final hearing (DN 6), and a motion for permission to bring a cellular telephone into the courthouse for use as a legal reference tool. (DN 11). The District Judge referred this matter to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), for rulings on all non-dispositive motions; for appropriate hearings, if necessary; and for findings of fact and recommendations on any dispositive matters. (DN 8).

I. Findings of Fact

Petitioner Joshua White ("White") pleaded guilty to misprision of a felony for knowingly concealing child pornography with anti-forensic tools. DN 289, 3:21-CR-155-DJH (W.D. Ky. Oct. 31, 2024). White was sentenced to twelve months and one day of imprisonment, followed by one year of supervised release. DN 307, No. 3:21-CR-155-DJH (W.D. Ky. Feb. 26, 2025). On March 26, 2025, White voluntarily surrendered at the Federal Medical Center in Lexington, Kentucky

and his sentence commenced. (DN 1, at PageID # 12; DN 1-13, at PageID # 92). On September 2, 2025, White was transferred to pre-release custody in a residential reentry center operated by Respondent Dismas Charities, Inc. (DN 1, at PageID # 12; DN 13-1, at PageID # 154). As of October 15, 2025, White is serving the remainder of his sentence in home confinement. (DN 13-1, at PageID # 154). The records reflect White's conditional release date on November 10, 2025. (*See* DN 1-10; DN 13-1).

White filed this petition for writ of habeas corpus under § 2241, claiming that the Bureau of Prisons ("BOP") miscalculated his time credits under the First Step Act of 2018 ("FSA"), Pub. L. No. 115-391, § 101, codified at 18 U.S.C. § 3632(d)(4). (DN 1, at PageID # 9). Specifically, White claims the BOP erroneously disallowed FSA time credits for the first thirty-six days of his sentence from March 26, 2025 to May 1, 2025. (*Id.*, at PageID # 16-17). White argues that but for the BOP's miscalculation, ten additional FSA time credits would be applied to his sentence and result in his conditional release on October 31, 2025. (*Id.*, at PageID # 12-13).

Respondents Dana Digiacomo and William K. Marshall, III ("Respondents") argue that the BOP correctly applied White's FSA time credits to his sentence and that White was not entitled to FSA time credits prior to May 1, 2025. (DN 13, at PageID # 140-47). Consequently, Respondents request that White's petition be denied. (*Id.*).

White additionally asserts that the § 2241 requirement that he first exhaust his administrative remedies should be excused based on futility. (DN 1, at PageID # 20-23). White's petition details his attempts to pursue the BOP's administrative remedies through the BP-8 and BP-9 grievance procedures, for which he is yet to receive a response. (*Id.*, at PageID # 18-19). He explains that the BOP's time to respond to his grievances has not yet expired but the expected duration of that process renders the BOP unable to timely administer relief. (*Id.*, at PageID # 23).

## II. Standard of Review

Habeas corpus relief under 28 U.S.C. § 2241 is reserved to challenge the manner in which a federal inmate's sentence is being executed. *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998). To obtain habeas relief under § 2241, the petitioner must show that his sentence is being executed "in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). *Pro se* petitions are "held to a less stringent standard" than those drafted by an attorney. *Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006) (quoting *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001)).

## III. Conclusions of Law

A. Motions for Service, Hearing and to Bring Telephone into the Courthouse (DN 6; DN 11)

White filed a motion for service, status conference, and conditional final hearing on his § 2241 petition.[1] (DN 6). The Court applies the Rules Governing Section 2254 Cases in the District Court to this case pursuant to Rule 1(b) of the same. Rule 8 of the Rules Governing Section 2254 provides that the district court must review the respondent's answer and any necessary transcripts and records to determine whether an evidentiary hearing is warranted. *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (finding an evidentiary hearing is not required when "the files and records of the case conclusively show that the prisoner is entitled to no relief."). Upon consideration of the record, the Court concludes that an evidentiary hearing is not warranted. For the reasons explained below, White is not entitled to relief and his motion for service, status conference, and hearing should be denied.

White also filed a motion for permission to bring a cellular telephone into the courthouse for use as a legal reference tool during any hearing or proceeding in this case. (DN 11). As the

---

[1] White's request for service was addressed in District Judge McKinley's Order on October 24, 2025. (DN 8).

Court finds that any evidentiary hearing is not warranted, the Court need not address White's request and his motion to bring a cellular telephone into the courthouse should be denied.

### B. White's § 2241 Claim

#### i. Exhaustion

A federal inmate must exhaust administrative remedies before filing a § 2241 habeas corpus petition. *Luedtke v. Berkebile*, 704 F.3d 465, 466 (6th Cir. 2013). Yet the exhaustion requirement is not without exceptions. *Overton v. Rardin*, No. 24-CV-12553, 2025 WL 2775961, at *2 (E.D. Mich. Sept. 29, 2025) (citing *Fazzini*, 473 F.3d at 235-36). In some instances, courts in this Circuit have excused the exhaustion requirement if it is more efficient to decide a § 2241 petition on the merits. *See Overton*, 2025 WL 2775961, at *2; *Frierson v. Rardin*, No. 2:24-CV-12456, 2025 WL 410072, at *2 (E.D. Mich. Feb. 5, 2025); *Hearon v. Farley*, No. 4:12CV1001, 2012 WL 2337915, at *2 (N.D. Ohio June 19, 2012); *Brown v. U.S.*, No. 09-12936, 2009 WL 3388644, at *1 (E.D. Mich. Oct. 19, 2009). The Court will exercise such discretion here to excuse White's procedural errors and address the merits of his claim.

#### ii. Merits Analysis

The FSA establishes incentives for federal inmates to encourage participation in rehabilitative programming. Namely, the FSA permits inmates to earn FSA "time credits" to apply towards time in pre-release custody or supervised release. 18 U.S.C. § 3632(d)(4)(C). An inmate becomes eligible to earn FSA time credits after the inmate "arrives or voluntarily surrenders" at the designated facility where his sentence will be served. 28 C.F.R. § 523.42(a). As a threshold matter, the Parties and Court are in agreement. White became eligible to earn FSA time credits on March 26, 2025, the date of his surrender at FMC Lexington. The question before the Court is whether White earned FSA time credits from the date of his surrender to May 1, 2025.

Just because an inmate is eligible to earn FSA time credits does not necessitate that he begin earning it. Rather, eligible inmates "shall earn 10 days of [FSA] time credits for every 30 days of successful participation in evidence-based recidivism reduction programming [("EBRR")] or productive activities [("PA")]." 18 U.S.C. § 3632(d)(4)(A)(i). An eligible inmate determined to be at a minimum or low risk of recidivating, and who had not increased his risk over two consecutive assessments, shall accrue an additional 5 days of FSA time credits for every 30-day period. § 3632(d)(4)(A)(ii). Thus, White must have successfully participated in EBRR or PA programming between March 26, 2025 and May 1, 2025 to earn FSA time credits during that time.

The BOP recommends EBRR and PA programming to inmates based on an inmate's individualized risk and needs assessment. 28 C.F.R. § 523.41(c)(2). The risk and needs assessment contains two components, the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") and the Standardized Prisoner Assessment for Reduction in Criminality ("SPARC-13"). U.S. Dep't of Just., Program Statement No. 5410.01 CN-2, at *8 (Mar. 10, 2023). PATTERN is typically completed during an inmate's initial classification within twenty-eight days of the inmate's arrival. *Id.* SPARC-13, on the other hand, involves multi-part, multi-department assessments that require the inmate's active participation. *Id.* Consequently, SPARC-13 is ordinarily completed within thirty days, but an inmate's failure to timely complete SPARC-13 assessments "will delay completion and negatively impact the inmate's ability to begin earning" FSA time credits by placing him in non-earning status regardless of his eligibility. *Id.*; *see also Luque v. Fed. Bureau of Prison*, No. 23-CV-3893 (NEB/DLM), 2024 WL 6043893, at *8 (D. Minn. April 19, 2024) ("The Court finds that it is reasonable for the BOP to interpret the FSA such that the start date for a prisoner's "successful completion" of programming and activities for counting purposes is when the prisoner has completed their initial [risk and needs] assessment

5

under § 3632(a)."); *Gutierrez v. Engleman*, No. 2:24-CV-05378-SVW-SSC, 2025 WL 2471774, at *4 (C.D. Cal. July 17, 2025) ("The Court joins others in finding that the BOP acted within its statutory authority in awarding FSA [time] credits to [p]etitioner only after he arrived in BOP custody, had his initial risk and needs assessment, and began participating in programming based on his individualized risk and needs assessment.").

The record reflects that White did not complete his initial risk and needs assessment until May 1, 2025 because he was missing four SPARC-13 assessments. (*See* DN 1-8; DN 1-10; DN 13-1). As a result, White did not earn FSA time credits during the first thirty-six days of his sentence. White first argues that he must have completed these assessments earlier because he received his individualized needs plan and initial classification on April 10, 2025. (DN 1, at PageID # 27). Alternatively, he argues that the BOP did not timely inform him of the missing assessments as required through disciplinary documents that he was being placed in refusal status. (*Id.*). He adds to the extent he completed the assessments, he did so prior to April 22, 2025 and the May 1, 2025 accrual date amounts to a clerical error. (*Id.*). Based on the foregoing, White requests that the Court order the BOP to apply the thirty-six disallowed program days, amounting to ten FSA time credits, and move his conditional release date to October 31, 2025. Respondents, for their part, contend that since FSA time credits are conditioned upon participation in recommended EBRR or PA programming, White could not earn FSA time credits until the initial risk and needs assessment recommending such programs was complete. (DN 13, at PageID # 146).

As described in the BOP's Program Statement 5410.01, SPARC-13 is not a prerequisite for an inmate's individual needs plan or initial classification. Thus, White's April 10, 2025 individualized needs plan and initial classification do not afford him the presumption that his SPARC-13 assessments were complete. White reports that he began participating in PA

6

programming assigned in his individualized needs plan prior to May 1, 2025 as proof that he was in successful participation status. (DN 14, at PageID # 159). Yet it does not change the reality that completion of his initial risk and needs assessment, including the SPARC-13 assessments, was a prerequisite to recommend EBRR and PA programming and begin earning FSA time credits. BOP Program Statement 5410.01 confirms as much, cautioning that failure to timely complete the SPARC-13 assessments will delay an otherwise eligible inmate's ability to begin earning FSA time credits.

White does not provide evidence to prove he completed the SPARC-13 assessments prior to May 1, 2025. Rather, he points to the delay in documentation alerting him of the missing assessments as he represents that he was unaware of his disallowed FSA program status until July 10, 2025. (DN 1, at PageID # 27). The BOP was not required to provide White with documentary notice of his missing SPARC-13 assessments. White is correct that if an inmate refuses or declines to participate and follow the rules of recommended EBRR or PA programming, the BOP must provide an inmate with disciplinary documentation of such refusal. 28 C.F.R. §§ 523.43(a), 541.5(a). However, that requirement is only applicable after an inmate is placed in earning status. § 523.43(a) ("[a]n inmate may lose *earned* FSA Time Credits") (emphasis added); U.S. Dep't of Just., Program Statement No. 5410.01 CN-2, at *11-12 (Mar. 10, 2023). The applicable statutes, regulations, and program statement indicate that documentation is required when the BOP withholds, or an inmate loses earned FSA timed credits. Here, White may have been eligible, but he had not begun earning FSA time credits. As White had outstanding SPARC-13 assessments until May 1, 2025, he had not yet entered earning status and the notice requirement did not apply.

White has not demonstrated that the BOP is in violation of its own policy or other applicable federal law. For the reasons described above, the BOP properly disallowed White to

7

earn FSA time credits for the first thirty-six days of his sentence because he was not yet in earning status. The BOP properly applied his earned FSA time credits, resulting in an FSA conditional release date of November 10, 2025. Accordingly, the Court recommends White's § 2241 petition be denied.

## V. RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** as follows:

(1) White's Motion for Service, Status Conference, and Conditional Hearing (DN 6) should be **DENIED**.

(2) White's Motion for Permission to Bring a Cellular Telephone into the Courthouse (DN 11) should be **DENIED**.

(3) The claim in White's § 2241 petition (DN 1) should be **DENIED**.

## NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. Fed.R.Civ.P. 72(b)(2). If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 474 U.S. 140, 150-51, 106 S. Ct. 466, 88 L.Ed.2d 435 (1985).

Copies:    Counsel of Record
           Joshua White, *pro se*